DETERMINED IN THE

# SECOND DEPARTMENT,

AT

## GENERAL TERM,

### December, 1879.

---

PHILIP H. REID AND HERMAN H. SCHWIETERING, RESPONDENTS, v. THE LANCASTER FIRE INSURANCE COMPANY OF LANCASTER, PA., APPELLANT.

*Policy on vessel — meaning of phrase ". lying at anchor" — not applicable when the vessel is beached — when a policy is avoided by leaving a vessel unoccupied.*

This action was brought upon a policy of insurance, issued by the defendant upon the steamer " Oceanus " "while plying on Jamaica Bay, bay and harbor of New York, * * * or while lying at anchor, or at any bulk-head, dock or pier." At the time of her destruction the vessel had been beached by the plaintiff, and holes opened in her hull to allow the water to run in and out with the rise and fall of the tide. A cable from her bow was fastened to a piece of iron sunk in the beach, and another from her stern was attached to an anchor.

*Held,* that the vessel was not " lying at anchor," within the meaning of the policy, and that it was error to leave that question to the jury.

The policy also provided that " if the *premises* should be vacated, in whole or in part, and shall remain unoccupied for the space of twenty days, * * * this policy shall be of no effect unless the company shall be immediately notified and shall signify its assent thereto on the policy."

The vessel was beached, her furniture taken out, and she was left unoccupied during the summer of 1878.

*Held,* that the word " premises " meant the vessel insured, and that the policy was invalidated by reason of her having been left vacant and unoccupied for more than twenty days.

APPEAL from a judgment in favor of the plaintiffs, entered upon the verdict of a jury and from an order ·denying a motion for a

new trial made upon the minutes of the justice before whom the action was tried.

*Flanagan & Bright*, for the appellant.

*Philip S. Crooke*, for the respondents.

BARNARD, P. J. .

The policy of insurance, upon which this action is brought, insured the plaintiff Reed against loss and damage by fire upon the steamer "Oceanus," "while plying Jamaica bay and bay and harbor of New York, at such parts or places as it may be necessary to send her during the continuance of this policy, or while lying at anchor or at any bulk-head, dock or pier." The steamer was destroyed by fire on September 28, 1878, while she was lying on the beach where the plaintiff had intentionally caused her to be driven by steam, head on, at high tide. Holes were also opened, permitting the water to run in and out of her hull as the tide rose and fell. A cable from the bow of the boat was fastened to a piece of railroad iron buried in the beach, and another cable from the vessel's stern was attached to an anchor. The vessel had been thus situated for a number of months before her destruction by fire. The question was submitted to the jury to determine whether the vessel, at the time of the loss, was lying at anchor, "within the true intent and meaning of the policy," and a verdict was rendered for the plaintiff.

I am of opinion that the construction placed upon the policy, extending it to cover a loss occurring while the vessel was situated, as this vessel is conceded to have been, cannot be sustained.

The language of the policy is exclusive. The vessel was only insured while she was plying the water, or was lying at anchor, or at any bulk-head, dock or pier. It is not pretended that when the loss occurred she was plying any where, or was lying at any bulk-head, dock or pier. But it is claimed that she was lying at anchor. By a vessel lying at anchor is generally understood her floating upon the water, but held by her cable and anchor. The fact that a vessel with her anchor out might (as suggested by the judge in his charge) happen, by means of an

exceptionally low tide, to touch the bottom, would not take her out of the protection of the policy. In such a case the grounding would be an accidental and casual circumstance; but here the vessel was intentionally beached at high tide, and her hull opened for the water to run in and out.

It is true she had an anchor out, but it was only as a greater security in case of storm or very high tide. A number of witnesses testified as to what is generally meant by the term "lying at anchor," and, with one exception, they agree that a vessel beached, as this was, cannot be said to be lying at anchor. A policy of insurance, like all other contracts, should be so construed as to carry out and give effect to the intention of the parties; and, in ascertaining such intention, the language of the instrument should receive its usual signification, particularly when, as in this case, it is not shown to have any technical meaning different from its ordinary one.

The policy also provided, that "if the premises should be vacated, in whole or in part, and shall remain unoccupied for the space of twenty days, or if the risk shall be increased or rendered more hazardous by a change in the occupation of the premises, or by any other means whatever within the control of the assured, this policy shall be of no effect, unless the company shall be immediately notified, and shall signify its assent thereto on the policy."

This vessel was vacant and unoccupied during the whole of the summer of 1878, and no notice to the company or assent by it is shown. She was left lying on the beach without any occupants; her furniture was taken out, and no use was made of her during 1878. This was, therefore, a plain violation and forfeiture of the policy, unless we can hold that the above quoted provisions do not apply to this vessel. The policy should be so construed as to give effect to every part of it. In the clause referred to, the term "premises" means the insured property; in this case, the steamer "Oceanus." Such vessels are usually occupied by their crews, and when laid up are not unfrequently the dwelling-place of those having charge of them. I fail to see how there could be any doubt or question, under the proof in this case, as to whether the insured property was vacated and left unoccupied for twenty days, and I

think the jury should have been instructed to find for the defendant, on the ground of the violation of this condition.

The judgment should be reversed and a new trial granted, costs to abide event.

DYKMAN, J., concurred; PRATT, J., not sitting.

Judgment and order denying new trial reversed and new trial granted, costs to abide event.